UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NEB MORROW, III,

                              Plaintiff,

     v.                                                    9:19-CV-555
                                                             (DNH/DJS)

L. VANDERWERFF, *et al.*,

                              Defendants.
_____

**APPEARANCES:**                            **OF COUNSEL:**

NEB MORROW, III
Plaintiff, *pro se*
10-A-6112
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. LETITIA JAMES                    STACEY A. HAMILTON, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff is an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS") and commenced this action

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights under the First Amendment. *See generally* Dkt. No. 15, Am. Compl. The District Court reviewed the Amended Complaint under 28 U.S.C. §§ 1915 & 1915A and dismissed one named Defendant but permitted the Amended Complaint to proceed. Dkt. No. 21. Following that review, the case proceeded to discovery on Plaintiff's First Amendment retaliation claim. *Id.* at p. 9. Defendants now move for summary judgment under FED. R. CIV. P. 56. Dkt. No. 50. Plaintiff opposes the Motion. Dkt. No. 54. Defendants have replied in further support of the Motion. Dkt. No. 55.

For the reasons set forth below, the Court recommends that the Motion be granted.

## I. FACTUAL BACKGROUND

The events underlying this litigation date to 2015 and 2016 when Plaintiff was an inmate at Auburn Correctional Facility. For several years, Plaintiff's inmate work assignment was as a clerk in the Auburn law library. Dkt. No. 50-2 at ¶ 5; Dkt. No. 54 at ¶ 5. Between March and September 2015, Plaintiff alleges that he made numerous complaints about working conditions at the law library, including complaints about improper staffing, lack of proper pay, and being required to work too long. *See* Am. Compl. at pp. 2-3 & Exs. 1-4. In July 2015, Plaintiff was advised by the Auburn C.F. Program Committee that he was being removed from his program assignment in the law library. Dkt. No. 50-5, Pl.'s Dep. at p. 121. He contends that this action was taken to retaliate against him for those complaints. Am. Compl. at p. 2. Defendants maintain

2

that none of them were personally involved in the decision to remove Plaintiff from his program assignment in Auburn's law library. *See generally* Dkt. Nos. 50-6, Vanderwerff Decl.; 50-8, Tanea Decl.; 50-11, Graham Decl.; 50-12, Ost Decl.; 50-14, Bruen Decl.; 50-15, Martuscello Decl.; 50-16, Bellnier Decl.; 50-17, McKoy Decl.; 50-20, Koenigsmann Decl.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations

of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Defendants seek summary judgment solely on the ground that none of them were personally involved in the decision to remove Plaintiff from his position in the facility law library. Dkt. No. 50-21, Defs.' Mem. of Law at pp. 3-6.

Plaintiff makes specific allegations of personal involvement as to Defendants Vanderwerff and Tanea. He claims, in conclusory terms, that these individuals acted in concert to remove him from his position, based on a request by Vanderwerff that Tanea approved. Dkt. No. 54-1, Pl.'s Mem. of Law at pp. 3-4. Each specifically denies having any role in Plaintiff's removal from the library position. Vanderwerff Decl. at ¶15; Tanea Decl. at ¶¶ 9 & 11. Each also denies that they had the individual authority to remove Plaintiff from his inmate program assignment. Vanderwerff Decl. at ¶12; Tanea Decl. at ¶12. The record offered by Defendants, in fact, establishes that removal from an inmate program assignment is made by the facility Program Committee. Vanderwerff Decl. at ¶ 13; Tanea Decl. at ¶ 8 & Ex. A. This is consistent with Plaintiff's own testimony that he received notification of his removal from the Program Committee. Pl.'s Dep. at p. 121. Neither Vanderwerff nor Tanea has served on the Program Committee at Auburn Correctional Facility. Vanderwerff Decl. at ¶ 14; Tanea Decl. at ¶ 10.

This record demonstrates that no reasonable factfinder could conclude that either Vanderwerff or Tanea was personally involved in Plaintiff's removal from his work assignment. *Vega v. Lareau*, 2010 WL 2682307, at *8 (N.D.N.Y. Mar. 16, 2010), *report and recommendation adopted*, 2010 WL 2682289 (N.D.N.Y. July 2, 2010); *Smith v.*

*Deckelbaum*, 2000 WL 1855128, at *5 (S.D.N.Y. Dec. 19, 2000). Accordingly, summary judgment is appropriate as to them.

Plaintiff has also sued a number of individuals who at the relevant time held supervisory positions within DOCCS. The Amended Complaint names five Defendants identified as Deputy Commissioners for DOCCS - Bruen, Martuscello, Bellnier, McKoy, and Koenigsmann. Am. Compl. at p. 2. They are alleged to have covered up Plaintiff's improper termination. *Id.* at p. 10. Plaintiff also sued Graham, at the time Auburn's Superintendent, and Ost, then DOCCS' law library coordinator, alleging that they failed to properly address and remedy his removal from the law library when they became aware of it through grievances he filed. *Id.* at pp. 5-6.

To state a retaliation claim Plaintiff must allege, *inter alia*, "that the defendant took adverse action against" him. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Here, the adverse action alleged is Plaintiff's removal from his position as a law clerk. *See* Pl.'s Mem. of Law at pp. 2-3. Plaintiff, however, testified at his deposition that Bruen, Martuscello, Bellnier, McKoy, Koenigsmann, Graham, and Ost had nothing to do with his termination from the law library. Pl.'s Dep. at pp. 76 & 79. That testimony is consistent with the sworn statements of those Defendants that they had no role in his removal from the law library and have never served on the Auburn C.F. Program Committee. Graham Decl., ¶¶ 10 & 12; Ost Decl., ¶¶ 12-13; Bruen Decl., ¶ 9 & 11; Martuscello Decl., ¶¶ 10 & 12; Bellnier Decl., ¶¶ 10 & 12; McKoy Decl., ¶¶ 10-11;

Koenigsmann Decl., ¶¶ 10 & 12.  As a result, he cannot establish that these Defendants were directly involved in that alleged adverse action.

Nor is Plaintiff entitled to relief against these individuals based solely on their supervisory roles.  A supervisory official "may not be held liable for damages merely because he [or she] held a high position of authority."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Despite this rule, the Second Circuit for some time held that a supervisory official could be held liable under circumstances related to that supervisory role that did not involve their direct action.  *See Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995).  *Colon* set forth five theories of liability that could apply to supervisory officials.  *Id.* at 873.  The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), however, "engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*."  *Reynolds v. Barrett*, 685 F.3d 193, 206 n. 14 (2d Cir. 2012).  The conflict remained unresolved until the Second Circuit's decision in *Tangreti v. Bachmann* which concluded that "after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

*Tangreti* requires that Plaintiff allege and establish that these Defendants violated his rights "by [their] own conduct, not by reason of [their] supervision of others who committed the violation."  983 F.3d at 619.  For supervisory Defendants, "a mere

7

'linkage' to the unlawful conduct through 'the prison chain of command' . . . is insufficient to show his or her personal involvement in that unlawful conduct." *Fabrizio v. Smith*, 2021 WL 2211206, at *9 (N.D.N.Y. Mar. 10, 2021), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021). The alleged failure to remedy a wrong committed, as Plaintiff alleges as to these Defendants, is insufficient after *Tangreti*, to establish their personal involvement. *Logan v. Graham*, 2021 WL 4440344, at *4-5 (N.D.N.Y. Sept. 28, 2021); *Fabrizio v. Smith*, 2021 WL 2211206, at *9.

Plaintiff's opposition regarding the supervisory officials relies on pre-*Tangreti* caselaw that permitted liability under *Colon* based on a failure of a supervisor to take corrective action. Pl.'s Mem. of Law at pp. 6-8 (citing cases). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test." *Fabrizio v. Smith*, 2021 WL 2211206, at *10 (citing cases).

Plaintiff, therefore, has failed to establish the requisite personal involvement and Defendants Bruen, Martuscello, Bellnier, McKoy, Koenigsmann, Graham and Ost are entitled to summary judgment on that basis.

### IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 50) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  January 6, 2022
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

9